ST. JOHN v. NEW YORK CENT. & H. R. R. CO. (Supreme Court, Appellate Division, Fourth Department. December 18, 1897.) Action by William H. St. John against the New York Central & Hudson River Railroad Company. Eugene Van Voorhis, for plaintiff. Edward Harris, for defendant. No opinion. Motion for a new trial denied, and judgment ordered for the defendant, with costs.

WARD, J. (dissenting). This action is for injuries to the plaintiff received at the University avenue crossing of the New York Central in Rochester, N. Y., received November 29, 1896. Upon the trial the plaintiff was nonsuited, and the plaintiff's exceptions were ordered to be heard in the first instance at this court. At this crossing there were 15 tracks. Tracks 1, 2, 3, and 4, numbering from the south to the north, and the other tracks were sidings and switches. The width of this crossing was about 300 feet. The plaintiff and one Johnson French, his brother-in-law, had occasion to go over this crossing about 3 o'clock p. m. French lagged behind for some purpose, and the plaintiff proceeded nearly across the crossing, when he was stopped by a train of defendant's, with open flat cars, that was passing up and down on a siding that was the next track to track 1, and south of it. When the plaintiff started to cross the track, he saw no obstruction to his passage. He saw a train facing eastward that

had stopped at the coal house above or west, on track 1, which was a cattle train of about 30 cars, that had stopped for coal. The plaintiff proceeded until he found himself in the space between track 1 and the next track south of it, which space is 7.2 feet wide. He stood there waiting for the track to be cleared of the train in front of him. French came on after him, and French discovered that the train at the coal house (the cattle train) had started east. He shouted to the plaintiff, to warn him of the approach of that train, which the plaintiff did not hear. Both French and the plaintiff state that they did not hear the whistle blown, bell rung, or any signal indicating the approach of the cattle train. French states, however, that he heard the rumble of the cars, which attracted his attention. The plaintiff did not hear the approach of the train, owing, doubtless, to the rumble of the train that was approaching in front of him. But as the cattle train approached the crossing, and got very near to the plaintiff, going at a rate of from 15 to 20 miles per hour, the plaintiff discovered the approach of that train, but it was too late for him to run back over track 1 and escape. He was consequently hemmed in between track 1 and the track south of it, over which the flat-car train was passing. French had come and stood beside the plaintiff, and the two stood in the center of the space between the two passing trains, which space was from 3 feet 6 inches to 4 feet 2 inches .between the jutting cars or platforms of the p ıssing trains. It appeared that the cars of each train would jut over the rails about 18 to 20 inches. It is not probable that any accident would have happened to the plaintiff, as he was a man experienced in the use of cars, and it does not appear that he was nervous or excited, but for this singular circumstance: After all but about six of the cattle cars had passed by plaintiff eastward, and a number of the cars of the other train had passed by them westward, French, who was a shorter man than the plaintiff, was hit by an arm, stick, or substance that stuck out beyond the sides of the flat-car train some 18 inches, and passed by him, just hitting him, but it struck the plaintiff, knocked him down, threw him against the cattle train, and severely injured him. It appeared by the map in the case that the space between track 1 and the track next south of it did not broaden out to the west to any perceptible extent for some distance. It was a clear day, and there was no difficulty in the plaintiff seeing the train on track 1 had he been watching it. His attention seems to have been directed to the passing train in front, and, hearing no signal of the approach of the other train, he found himself hemmed in in this position, as above stated. There was ample evidence of the defendant's negligence to have gone to the jury. The cattle train should not have started over this crossing without having given some signal, and it was negligence to have this arm or stick sticking out from the other train 18 inches, when people were watching there to get across that crossing. But the defendant's counsel claims especially from the evidence above quoted that the plaintiff was guilty of contributory negligence as a matter of law, and it was not a question for the jury. This was a ques-

tion for the jury. The plaintiff had a right to go across the tracks at this crossing, as he had no notice of the approach of the cattle train, and as, the last he saw of it, it was standing still, and, as his attention was diverted by the moving train in front of him, it was for the jury to say, under all the circumstances, whether his negligence contributed to the injury. If he had discovered this train in time, he might have passed to the west, to a broader space, but it was right upon· him when he discovered it. His companion, French, had taken a position there for safety. He knew that, if he stood in the center between these tracks, there was space enough so that he would be safe, and it is calculated that this space is sufficient for railroad employés and other people to stand between passing trains. While the space was narrow between the two trains, there was no danger if the trains were properly equipped. He had no reason to expect that this arm would stick out, and interfere with his safety. The proof is that the arm did cause the mischief, and upon this motion for a new trial we must give the plaintiff's testimony the most favorable view it will bear to him. This was a dangerous crossing, and I think, take all the circumstances of the case, questions of the negligence of both the plaintiff and the defendant were for the jury. The plaintiff's exceptions should be sustained upon the ground that the question of the defendant's negligence and the plaintiff's negligence were for the jury, and that a new trial should be granted, with costs to the appellant to abide the event. GREEN, J., concurs.